# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CARLA JO MORGAN,<br><br>    Plaintiff,<br><br>  v.<br><br>CAROLYN W. COLVIN, Acting Commissioner of Social Security,<br><br>    Defendant. | Case No. 1:12-CV-00470-LJO-SMS<br><br>FINDINGS AND RECOMMENDATIONS RECOMMENDING THAT THE COURT AFFIRM DENIAL OF BENEFITS AND ORDER JUDGMENT FOR COMMISSIONER |

Plaintiff Carla Jo Morgan, by her attorney Sengthiene Bosavanh, seeks review of the final decision of the Commissioner of Social Security ("Commissioner" or "Defendant") denying her application for disability insurance benefits (DIB) under Title II and supplemental security income (SSI) under Title XVI of the Social Security Act.[1] The matter is before the Court on the parties' cross-briefs, which were submitted, without oral argument, to the Honorable Sandra M. Snyder, United States Magistrate Judge. The undersigned finds the decision of the Administrative Law Judge ("ALJ") to be supported by substantial evidence in the record as a whole and based upon proper legal standards, and recommends that the Court affirm the Commissioner's denial of benefits.

## I. Procedural History

Plaintiff claims she has been disabled since December 29, 2005. She applied for benefits in September 2008. These were denied in December 2008 and upon reconsideration in January 2009.

---

[1] Where the applicable DIB and SSI regulations are virtually identical, this opinion refers only to the DIB regulation.

1

On May 5, 2010, she testified before ALJ Timothy Snelling. He denied her application in a decision of July 9, 2010. Because the Appeals Council denied review, this is the decision reviewed on appeal.

## II. Factual Record

### A. Plaintiff's Background and Testimony

Plaintiff was born in 1953 and was age 56 at the hearing. She had a high school education and past relevant work as a secretary or legal clerk. AR 35-37. She said she had to stop work in December 2005 because of pain in her body and shooting up her arms. AR 38. She had carpal tunnel surgery on the right wrist in October 2008 and on the left wrist in February 2009. AR 38, 55. She continued to have problems holding and picking up objects and could not type. AR 39-40. Hand use hurt; her fingertips went numb and pain went up through the elbow. AR 41. She had trouble using buttons and zippers and washing herself. AR 43. Both hands were often swollen in the mornings. AR 39-40. Her hands would turn purple and burn. AR 53-54. She took Neurontin for the nerve endings and had bowel accidents as a side effect. AR 53-54.

When asked about Vicodin, Plaintiff stated that she had not taken Vicodin at all in two years. AR 57. When asked about a positive test for methamphetamine less than a year earlier, she explained that this was a one-time or exceptional use in response to a death in the family. AR 58.

### B. Treating Records

Plaintiff has had a long history of drug-seeking behavior. As early as 1996, medical records describe her as "suffering from a Vicodin addiction for quite some time." AR 273. At that time she had recently been jailed for altering a Vicodin prescription and lost her job as a result. *Id*. She lost another job (or possibly the same job) at a physician's office when a friend called in narcotic pain pills to the pharmacy on her behalf. AR 296. The most recent record evidence of Vicodin abuse is from eighteen months before the hearing, at a psychological consultative examination. AR 344-47. At the examination Plaintiff denied that her Vicodin use was a problem. AR 347. She also stated that she had been arrested the previous year for spousal abuse, and added that when she became unemployed in December 2005, it was because she was fired for having "numerous doctor's appointments." AR 344. The examiner wrote that Plaintiff "does not see the connection between losing her job, losing her boyfriend of 25 years due to her Vicodin abuse." AR 345. Although

Plaintiff insisted that her positive test for methamphetamines in June 2009 (AR 416) reflected an exceptional use, between August 2007 and June 2008 she repeatedly rebuffed her physician's reminders to get blood work done. AR 297, 305, 307, 309, 312, 322, 324, 325.

Plaintiff describes depressive symptoms, but there is no evidence that she has sought or received treatment from a specialist. Beginning in 2005, she was prescribed Prozac by treating physician Delbert Morris, M.D. In August 2007, she complained of depression to her current treating physician, Dr. Robert Forester, M.D., and he resumed Prozac. AR 299-300. However, the record suggests that her depression may have been situational: in September 2007 she was depressed due to a family death, in October 2007 she referred to "another family funeral," and in February 2008 she described "ongoing depressive issues with family tragedies." AR 301, 309, 319. Records from April 2008 show she was "sometimes sporadic about her dosing of Prozac." AR 321.

In June 2008, although Dr. Forester described Plaintiff as appearing "chronically ill" with complaints of depression and pain in her hands, feet, and muscles, Plaintiff admitted that she had only taken the prescribed Vicodin and had not even picked up the other medicines that she had been prescribed. AR 324. The next month Plaintiff was diagnosed with probable carpal tunnel syndrome. AR 333. Prior to surgery, she engaged in activities which the ALJ characterized as "not limited to the extent that one would expect" given this impairment, including moving a mattress down stairs. AR 279. In October 2008, Plaintiff underwent a right carpal tunnel release. AR 389. The next month she reported no numbness in her right hand. In February 2009, she underwent a left carpal tunnel release. Later that month she had "excellent hand motion." AR 380.

### C. **Opinion Evidence**

In August 2007 Dr. Forester stated that he suspected that "a lot of [Plaintiff's] problems may emanate from depression, fibromyalgia, and pain pill usage." AR 297. However, he did not elaborate with an opinion regarding her limitations, nor did he specify which "problems" he was referring to. In November 2008, consultative psychologist Laura Petracek, Ph.D., performed a consultative examination and opined that Plaintiff had a number of mild difficulties. AR 344-47. In particular, Plaintiff had "mild difficulty in understanding, remembering and carrying out complex instructions," and would perform "optimally" in a work environment requiring simple and repetitive tasks. AR

347. In addition, Dr. Petracek stated that appropriate treatment and abstinence may improve Plaintiff's mild condition. AR 347.

In December 2008, state agency psychologist Brady Dalton, Psy.D., reviewed the consultative examination and opined that Plaintiff had only mild limitations and no severe mental impairment. AR 352, 362, 364. In April 2009, state agency psychiatrist K. J. Loomis, M.D., concurred with that opinion after reviewing the record. AR 397-398. That same month, state agency physician K. Vu, D.O. opined that Plaintiff could perform a range of light work including frequent bilateral handling and fingering. AR 394. The examiner added that the record showed "no signs of bonafide fibromyalgia." AR 398.

### III. Disability Standard

To be disabled, a claimant must have a medical impairment or impairments capable of lasting at least twelve months, and these must be so severe that she can engage in neither her past work nor, in light of her vocational limitations, in any work existing in significant numbers in the national economy. 42 U.S.C. § 1382c(a)(3). The claimant has the burden of proof, except that the Commissioner must prove the number of jobs in the economy. *Terry v. Sullivan*, 903 F.2d 1273, 1275 (9th Cir. 1990). She will be found disabled either if she satisfies all the elements of this definition or if her condition is defined as disabling under the Commissioner's "listings." *See* 20 C.F.R. § 404.1520, SSR 85-28. For administrative purposes, the Commissioner prescribes the order in which the ALJ considers these factors, and instructs the ALJ to end his inquiry as soon as he reaches a dispositive finding, either in that the claimant fails to satisfy an element of disability or in that she is disabled by definition. *See* 20 C.F.R. § 404.1594(b)(5) (sequence promotes uniformity, efficiency, neutrality, and careful documentation); *Cleveland v. Policy Mgmt. Sys. Corp.*, 526 U.S. 795, 804 (1999) (sequence embodies "presumptions about disabilities, job availability, and their interrelation" which "grow out of the need to administer a large benefits system efficiently").

### IV. The ALJ's Decision

This inquiry has five steps, which the ALJ considered in turn. *See* 20 C.F.R. § 404.1520. First, Plaintiff had not worked since the alleged date of disability. Second, she had severe impairments meeting the durational requirement of twelve months. These included hypothyroidism,

carpal tunnel syndrome, fibromyalgia, peripheral edema, peripheral neuropathy, and depression. Third, her impairments were not disabling under a "listing."

The ALJ determined that Plaintiff's residual functional capacity ("RFC") corresponded to "light" work, no concentrated exposure to vibration, postural activities or overhead reaching performed only occasionally (up to one third of the workday), and contact and interaction with the general public, coworkers, and supervisors only frequently (up to two thirds of the workday). At step four, the ALJ found that a person with these limitations could do Plaintiff's past work as a secretary as she actually performed it. Thus, she was not disabled.

On appeal, Plaintiff argues that the ALJ did not properly account for the effects of drug abuse on Plaintiff's disability. She also argues that substantial evidence did not support the ALJ's conclusion that Plaintiff was not disabled, given Plaintiff's subjective claims and supporting medical evidence.[2]

## V. Scope of Review

Congress has provided a limited scope of judicial review of a decision to deny benefits under the Act. This Court may review only whether the decision applied the proper legal standards and made findings supported by substantial evidence. *Bray v. Comm'r*, 554 F.3d 1219, 1222 (9th Cir. 2009). Substantial evidence is more than a scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Id*. Where the record as a whole can support either a grant or denial, the Court may not substitute its judgment. *Id*.

## VI. Discussion

### A. The ALJ Properly Considered Plaintiff's History of Substance Abuse

A finding of "disabled" under the five-step inquiry does not automatically qualify a claimant for disability benefits. Under provisions added by the Contract with America Advancement Act, Pub.L. No. 104–121, 110 Stat. 847 (March 29, 1996), an "individual shall not be considered to be disabled for purposes of [benefits under Title II or XVI of the Act] if alcoholism or drug addiction

---

[2] Plaintiff mentions findings by Drs. Forester and Petracek apparently as support for her credibility. However, she also appears to argue that the ALJ gave insufficient reasons for rejecting the medical opinion of treating physician Dr. Forester that "a lot of [Plaintiff's] problems may emanate from depression, fibromyalgia, and pain pill usage." The Court finds no error. The opinion is vague as to "problems," and in any event the ALJ did not reject it: he acknowledged that Plaintiff had drug-seeking behavior and had severe impairments including fibromyalgia and depression at step two.

would (but for this subparagraph) be a contributing factor material to the Commissioner's determination that the individual is disabled." 42 U.S.C. §§ 423(d)(2)(C), 1382c(a)(3)(J); *see also Bustamante v. Massanari*, 262 F.3d 949, 954 (9th Cir. 2001). The SSA's implementing regulations specify: "If we find that you are disabled and have medical evidence of your drug addiction or alcoholism, we must determine whether your drug addiction or alcoholism is a contributing factor material to the determination of disability." 20 C.F.R. §§ 404.1535(a).

In *Bustamante*, the ALJ peremptorily rejected evidence showing that the claimant was disabled, pointing to the fact that his impairments were "the product and consequence of his alcohol abuse." *Bustamante* at 954-55. The court held that it was error for an ALJ to reach this conclusion prior to first determining whether the claimant was disabled under the five-step inquiry. *Id*. The Social Security Administration has recently published a policy interpretation to similar effect. SSR 13-2p. Its procedure applies when there is evidence "establishing that DAA [drug or alcohol abuse] is a medically determinable impairment(s) (MDI) *and* we determine that a claimant is disabled considering all of the claimant's medically determinable impairments (MDIs)." SSR 13-2p.

Plaintiff argues that the ALJ erred because he did not follow this procedure. However, the ALJ did not need to do so because neither of its necessary conditions was present. First, the ALJ never viewed Plaintiff's narcotics abuse as a source of impairment. In fact, Plaintiff herself denied that narcotics abuse was an impairment, testifying that she had ceased using Vicodin two years before the hearing. Thus, Plaintiff waived that argument, and cannot now fault the ALJ for not identifying an impairment that she herself denied she had.

Second, the ALJ did not determine that Plaintiff was disabled considering all her impairments. Plaintiff acknowledges this, but argues that the ALJ improperly reached this conclusion because he took credibility into account:

> Before the ALJ can use drug dependence as a discrediting factor, the ALJ must first go through the five step sequence with all of the impairments, including DAA; then, if disability is found, the ALJ separates out the effects of DAA in a second five step analysis. If, and only if, the ALJ found Plaintiff was disabled under the five-step inquiry, should the ALJ have evaluated whether Plaintiff would still be disabled if her DAA stopped. *Bustamante v. Massanari*, 262 F.3d 949 (9th Cir. 2001); SSR 13-2p.

6

Pl. Brief at 8. Plaintiff misinterprets these authorities. *Bustamante* and of SSR 13-2p have little to say about the use of drug dependence as a discrediting factor. In fact, SSR 13-2p specifically makes clear that it does not impact the use of drug dependence as a credibility issue:

> We do not have special rules for evaluating a claimant's credibility in cases involving *DAA*. Adjudicators must not presume that all claimants with *DAA* are inherently less credible than other claimants. We will apply our policy in SSR 96-7p and our regulations as in any other case, considering the facts of each case.

SSR 13-2p. There is no authority for the proposition that when an ALJ performs the five-step inquiry prescribed in SSR 13-2p, he should not consider credibility. Such a policy would be impracticable. Instead, the ALJ properly found that Plaintiff was not disabled, considering all her impairments and taking credibility into account. Even if he did not view her drug addiction as an impairment that caused real symptoms, he could properly view it as a credibility factor leading Plaintiff to feign symptoms. Because he did so, there was no need to apply SSR 13-2p.

## B.  The ALJ Properly Considered Plaintiff's Symptom Testimony

Plaintiff argues that the ALJ should have credited her account of her symptoms. To reject a claimant's symptom testimony—absent affirmative evidence of malingering, and assuming her impairments could reasonably give rise to her reported symptoms—the ALJ must make specific credibility findings supported by clear and convincing reasons. *See* 20 CFR 404.1529(c); *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880 (9th Cir. 2006). Factors to consider include the claimant's daily activities; the location, duration, frequency, and intensity of the symptoms; precipitating or aggravating factors; and measures taken to alleviate the symptoms—including medication (type, dosage, effectiveness, and side effects), other medical treatment, and non-medical measures such as lying down or changing positions. *Id*. An ALJ may also consider ordinary techniques of credibility evaluation, such as reputation for lying, prior inconsistent statements concerning the symptoms, and other testimony that appears less than candid. *Tommasetti v. Astrue*, 533 F.3d 1035, 1039 (9th Cir. 2008). If the ALJ decides to reject her testimony after a medical impairment has been established, the ALJ must make specific findings assessing the credibility of her subjective complaints. *Ceguerra v. Secretary of Health and Human Services*, 933 F.2d 735, 738 (9th Cir. 1991). The credibility

1   findings must be "sufficiently specific to permit the court to conclude that the ALJ did not arbitrarily
2   discredit claimant's testimony." *Thomas v. Barnhart*, 278 F.3d 947, 958 (9th Cir. 2002).

3         Having found that Plaintiff's impairments could reasonably give rise to her reported
4   symptoms, the ALJ made specific findings that Plaintiff was not credible which were supported by
5   clear and convincing evidence. As the ALJ found, Plaintiff had a history of Vicodin abuse and
6   addiction long before she alleged disability. *See Schneider v. Com'r Social Sec. Admin.,* No. 10–
7   35544, 433 Fed. Appx. 507, 509 (9th Cir. May 10, 2011) (evidence of drug-seeking behavior is a
8   valid reason to discredit testimony). She lost a job in 1996 because she was jailed for altering a
9   prescription. While she claims she stopped working in December 2005 due to disability, she in fact
10  lost her job for repeatedly missing work (which she attributes to "numerous doctor's appointments,"
11  AR 334). On another occasion she alleged to her physician that her "pills" were stolen from her. AR
12  303. She refilled her Vicodin prescriptions more frequently than prescribed. AR 303. In June 2009,
13  she tested positive for amphetamines and opiates.

14        The ALJ also noted that Plaintiff's activities of daily living were inconsistent with the extent
15  of symptoms and limitations that she described. In 2007 she was noted to be assisting in moving a
16  mattress down stairs, and she is able to drive. The ALJ also noted that Plaintiff had not received the
17  type of medical treatment one would expect for a totally disabled individual. She never sought
18  treatment from a specialist for her depressive symptoms. Surgery for carpal tunnel syndrome
19  reflected that the surgery was successful with a return to a full range of motion. The record contains
20  no opinions from treating or examining physicians indicating that Plaintiff was disabled or even that
21  she had limitations greater than those found by the ALJ.

22        Plaintiff argues that her claims were substantiated in clinical findings. Plaintiff recites the
23  observations of the psychological consultative examiner, emphasizing his finding that Plaintiff's
24  "insight and judgment appeared to be poor." AR 345. However, poor insight and judgment is neither
25  a medical nor a vocational factor relevant to the finding of disability. Plaintiff emphasizes a
26  statement by Dr. Forester that "a lot of her problems may emanate from depression, fibromyalgia,
27  and pain pill usage," but this statement contained no concrete opinion as to Plaintiff's limitations or
28  even as to whether she had any of these conditions. In any event, his "findings" of depression, pain,

and pain pill usage were all consistent with the ALJ's decision. Otherwise, the clinical findings are dominated by complaints of pain and narcotic-seeking behavior. For example, in June 2008, Dr. Forester gave her prescriptions for Premarin, Pamelor, and Vicodin; she ran out of Vicodin early, but she never picked up her prescriptions for Premarin or Pamelor. Medical opinions may be disregarded to the extent that they are premised on discredited complaints. *Morgan v. Comm'r of the Soc. Sec. Admin.*, 169 F.3d 595, 602 (9th Cir.1999).

**VII.   Conclusion**

A review of applicable law and facts indicates that the ALJ applied appropriate legal standards and that substantial credible evidence supported the ALJ's determination that Plaintiff was not disabled. Accordingly, the undersigned recommends that the District Court affirm the Commissioner's determination.

These Findings and Recommendations will be submitted to the Honorable Lawrence J. O'Neill, United States District Judge, pursuant to 28 U.S.C. § 636(b)(1). On or before **thirty (30) days** from the entry of this decision, any party may file written objections with the Court. The document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Plaintiff is advised that, by failing to file objections within the specified time, she may waive the right to appeal the District Court's order. *Martinez v. Ylst*, 951 F.2d 1153 (9th Cir. 1991).

**IT IS SO ORDERED.**

DATED:  5/24/2013                                            /s/ SANDRA M. SNYDER
                                                             UNITED STATES MAGISTRATE JUDGE